**TELOS VG, PLLC**
John H. Bogart (08305)
R. Lee Saber (11020)
299 South Main Street, Suite 1300
Salt Lake City, UT  84111
Telephone:  (801) 535-4304
jbogart@telosvg.com
lsaber@telosvg.com
  Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In2 Networks, Inc., a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Honeywell International, Inc., a Delaware company, and ADI, a Delaware corporation,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:11-cv-00006-TC<br><br>Judge Tena Campbell |

In2 Networks, Inc. ("In2"), a Utah corporation, by and through its attorneys of

record, hereby alleges and states as follows:

### PARTIES

1.      In2 is a Utah corporation.  In2 develops software and hardware products,

technology, and services for the Home Systems market.

2.      Honeywell International, Inc. ("Honeywell") is a Delaware corporation

authorized and doing business in the State of Utah.  Honeywell controls more than 50%

of the home security systems market in the United States and in Utah, and more than 50%

of the home control systems market in the United States and in Utah.  Home

environmental control systems control both security and thermostat systems (collectively,

"Home Systems").  The home security systems market consists of electronic home

security systems, typically including window and door alarms connecting to an offsite

monitoring center and allowing the homeowner remote access and control.  The home

environmental control system market consists of electronic systems controlling home

thermostats allowing the homeowner remote access and control.  Honeywell is the largest

home security company in the United States and controls more than 50% of the Home

Systems in the United States, and holds a dominant position in the commercial security

market.

3.      ADI is an authorized distributor of Honeywell and other security systems.

## JURISDICTION & VENUE

4.      This Court has jurisdiction of this matter because the contracts and

conduct at issue in this case were executed and/or performed in Utah, and the plaintiff is

located and was injured in Utah.  The claims set forth in this Complaint arise, *inter alia*,

under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§1 and 2) and seek treble

damages pursuant to Section 4 of the Clayton Act (15 U.S.C. §15(a)).  This Court has

subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§1331 and 1337(a).

The Court has jurisdiction over state law claims pursuant to 28 U.S.C. §1332(a) as

Plaintiff and Defendants are of diverse citizenship and the amount in controversy exceeds

$75,000.

5.      Venue is proper in the District of Utah under 28 U.S.C. §1391(b) and 15 U.S.C. §22 because Defendants transact business, committed an illegal or tortious act, have an agent, or are found in this District, Plaintiffs is located in this District, and a substantial portion of the events described in this Complaint occurred or were carried out in this District.

## FACTS

6.      In2 developed the Vista ICM hardware that is compatible with the Honeywell Vista series of security panels. The purpose of the Vista device is to communicate with Honeywell security systems and make Honeywell systems accessible for internet or external web control.

7.      In2 paid for: (i) all hardware development costs including schematic, layout and prototype boards; and  (ii) all firmware engineering development costs including custom drivers to communicate with the Honeywell Vista security system keypad communication bus.

8.      In2 provided Honeywell with prototype and evaluation units for testing and evaluation purposes.  In2 paid for hardware updates, engineering services and travel required to satisfy all Honeywell testing requirements.

9.      Honeywell's Director of Marketing Al Lizza promised to sell 28,000 Vista ICM units generating approximately $2.9M revenue to In2 during the first 36 months of product sales.

10.     In2 entered into an OEM Supply and License Agreement dated June 1, 2006 signed by Honeywell's Gordon Hope.

11.     Honeywell required In2 to execute a Bailment and Services Agreement

("Bailment Agreement") in place of the OEM Supply and License Agreement in March, 2007 or the project would be terminated.  In2 executed the Bailment Agreement countersigned by Honeywell's John Kovach.

12.     In2 sold the Vista ICM hardware to Honeywell as an OEM Honeywell Branded product.  Honeywell purchased and sold approximately 6,000 units of the In2 developed Vista ICM device through January 2010.  Honeywell sold the In2 developed Vista ICM exclusively through Honeywell owned ADI.

13.     In2 developed the www.in2myhome.com and www.in2mybusiness.com web portal services compatible with the Vista ICM allowing customers to purchase In2 services for web based remote access to Honeywell security systems using the Vista ICM.

14.     Brian Casey, General Manager with Honeywell and Product Manager for the Vista ICM negotiated a discounted fee structure for Vista ICM customers to utilize In2 email web services for security system events using the www.in2myhome.com web site.

15.     Through Mr. Casey, Honeywell sent approximately 1,000 letters in December 2009 to every dealer who purchased the In2 developed Vista ICM product that the Security system email notification would be a paid service through In2 Networks effective January 1, 2010.

16.     In2 custom engineered the required updates to the www.in2myhome.com web service to support the new email notification as agreed with Honeywell.  Mr. Casey agreed to transition the Honeywell branded Vista ICM product to an In2 branded product in 2010.

17.    Mr. Casey and Honeywell confirmed that email service for Vista ICMs outside the In2 warranty period of 18 months was a "pay service".  Honeywell paid In2 $12,000 per month for 5 months from September 2009 – January 2010 for email services of Vista ICM customers.

18.    ADI is the exclusive distributor of the Vista ICM product.

19.    ADI, by or through the direction of its In2 product manager, Ed Constantine, unfairly provided Honeywell Security with all information, including name and address, for every dealer who purchased the In2 developed Vista ICM.

19.    Under the direction of Mr. Casey, Honeywell sent approximately 1,000 letters in January 2010 to all dealers who purchased Vista ICM units titled "Discontinuation of VISTA ICM product – effective immediately" stating that "This notice supersedes the notice on the VISTA ICM e-mail alert messaging sent out in December, 2009".  The letter states the Vista ICM was "obsolete" effective January 18, 2010.

20.    Letters sent by Honeywell to all dealers who purchased the Vista ICM disparages In2 Networks with the following assertion:  "Unfortunately, Honeywell is forced to take this action in light of recent concerns regarding our third-party supplier's ability to continue to provide long-term support of the VistaICM units and email messaging".

21.    Honeywell's Brian Casey and Josh Foster (Honeywell Security inside counsell) informed In2 after the letters had been sent that Honeywell had discontinued all sales, service and support of the Vista ICM.  Mr Casey and Mr. Foster further notified In2 that Honeywell would not allow In2 to sell the Vista ICM as an In2 branded product

as previously discussed and agreed.

22.     ADI materially breached its confidentiality obligations by disclosing In2 sales information to Honeywell Security regarding In2 product sales volumes and revenues through ADI.

23,      Mr. Casey acknowledged and agreed that Honeywell would continue to sell the Vista ICM to selected dealers, even after the discontinuation of the product per the letter sent January 2010 to multiple customers/dealers, at Honeywell's complete discretion and option.

24.     ADI refused to release any dealer information to In2 with respect to Vista ICM sales made by ADI.  ADI refused to release any dealer information to In2 for In2 branded products sold by ADI.

25.     The reasons provided by Mr. Casey in Honeywell's letter to their dealers are misleading, as demonstrated through their continued sales of the  In2 developed Vista ICM.  Service and support of the Vista ICM per the Agreement between In2 and Honeywell is a continuing obligation of Honeywell.

26.     The Vista ICM was sold exclusively through Honeywell owned ADI distributor with offices in the US, Canada, Europe, India and Australia.  Honeywell also sold the Vista ICM product directly to dealers in the Caribbean, Central America, Latin America and South America though the Honeywell Latin America sales office located in Miami, Florida.  Sales of the Vista ICM in these regions were also terminated effective January 18, 2010.  In2 developed other complimentary products that are compatible with the Vista ICM to provide a complete home control solution that includes Security, Thermostats, Lighting, Power and Music control.  In2 also sold In2 branded Thermostat

ICM, Lighting ICM, Music ICM and Vizia ICM units through ADI.

27.     In January 2010, ADI was advised by Honeywell that they should not continue to purchase products from In2.  ADI's product manager confirmed that he was advised by Honeywell security representatives to disengage from In2 and would not allow In2 to run any promotion with ADI.

28.     In2 Networks president Daren Orth discussed with Honeywell's Josh Foster the conversations with the ADI product manager Ed Constantine who was responsible for ADI selling In2 products.  Mr. Foster confirmed that he had advised ADI product managers not to engage with In2.

29.     ADI would not allow In2 to run promotions for In2 branded products after discussions with Honeywell.  After the conversation between Honeywell's Josh Foster and ADI's product manager Ed Constantine, ADI ceased ordering all In2 products for over 4 months.

30.     In2 is not listed on the ADI Line Card as an active supplier of products to ADI.

31.     In2 again requested from Josh Foster that Honeywell allow In2 to sell the Vista ICM under the In2 brand. Mr. Foster stated that In2 was not allowed to sell the product.

32.     Honeywell manufactures and sells a competing web service product under the direction of Honeywell's Gordon Hope who originally executed the agreement with In2 for the Vista ICM. This competing web service monitors Vista Security panels (Total Connect) and is sold exclusively by Honeywell through Security Monitoring Companies.

33.     Gordon Hope executed the agreements with In2 including the features,

pricing, intellectual property licenses, bailment terms, warranty, exclusive distribution through ADI and other technology escrow requirements.  Mr. Hope now manages the division that directly competes with the In2 developed Vista ICM with unfair influence on the relationships and contracts between In2 and Honeywell.

34.     The Total Connect products were not introduced into the market until more than 2 years after the Vista ICM began shipping.  The Total Connect product has been upgraded numerous times over the past 4 years to copy many of the core features contained in the In2 developed Vista ICM product including email notification, remote alarm controls, PDA/Phone access under the direction of Mr. Hope.

35.     Unauthorized disclosure of In2's confidential customer information by ADI to Honeywell allowed Mr. Casey (the GM for Honeywell) to disparage In2 and unfairly divert customer sales to the Honeywell Total Connect product.

36.     Honeywell has stifled competition by "strong arming" In2 out of the market and improperly terminating the Vista ICM product.

37.     Mr. Casey acknowledged that Honeywell continues to sell the Vista ICM product to select dealers, in spite of their purported concerns regarding support as claimed in the Discontinuation Letter sent in January 2010.

38.     Honeywell acknowledged that Vista ICM email service is part of the Vista ICM product warranty and such service does not need to be continued past the original In2 warranty period of 18 months.  Honeywell later threatened litigation against In2 if email service was discontinued after the In2 warranty period

39.     In2 has invested significant financial and engineering resources into the Vista ICM and has now been prohibited by Honeywell from selling or otherwise

distributing this product.

40.     Honeywell has eliminated all competition for web enabled Security Control products including the In2 developed Vista ICM by forcing In2 out of the market and defaming In2 Networks to the installing dealers.  Many dealers stopped purchasing all In2 products and web services as a direct result of the disparaging Honeywell letter sent by Honeywell's Mr. Casey.

41.     In2 licensed the Honeywell EnviraCOM protocol which is used to communicate with Honeywell VisionPro IAQ thermostats.  In2 developed, engineered and sold an Energy ICM providing Internet based control of the Honeywell VisionPro IAQ thermostats.  In2 distributes the Energy ICM through both Honeywell owned ADI and through numerous Heating/Cooling wholesale distributors.

42.     Honeywell Security and Custom Electronics requested In2 sell a Honeywell branded Energy ICM to compliment their Custom Electronics business.  Tim Trautman, the Product Manager for Honeywell, provided In2 with assurances of sales of 6,750 units over first 36 months, generating $1.07 million revenue to In2.

43.     In2 purchased materials including product inventory and custom Honeywell branded packaging based on Honeywell representations, commitments and product sales forecast.

44.     Honeywell marketing executives issued and released press releases on the launch of the Honeywell OEM Energy ICM and distributed press kits and other promotional materials.

45.     Honeywell displayed the Honeywell branded Energy ICM at trade shows with press kits and collateral materials supporting the launch of the Energy ICM as a

Honeywell product.

46.     Honeywell generated purchase orders and further committed to In2 their intention to launch the Energy ICM product.  In2 received confirmation from Honeywell purchasing that the PO's were generated.

47.     Honeywell failed to honor their commitment to launch the Energy ICM and did not send In2 the agreed upon purchase orders.  As a direct result, In2 incurred damages including excess inventory, lost revenue, costs associated with spent engineering and marketing resources, and custom Honeywell printed materials.

48.     In2 actively engaged with outside sales rep firms including Ridgeline Mechanical and EDOS to assist In2 in marketing and selling the In2 branded Energy ICM.  Some of these firms also rep Honeywell product.  Honeywell Vice President and General Manager John Tyhacz prohibited these outside rep firms from engaging with In2, including EDOS.

49.     In April 2010, John Tyhacz told the owner of EDOS that Honeywell would terminate their representation agreement if they engaged with In2.  Mr. Tyhacz's actions have caused damages to In2 by threatening the rep firms and not preventing them from independently engaging with In2.

50.     In2 proposed to John Tyhacz that Honeywell acquire the Energy ICM technology platform in May 2010.  John Tyhacz engaged in negotiations with In2 on technology platforms and pricing for the technology acquisition.  During the negotiations, Pat Tessier threatened that In2 should cooperate with Honeywell, or Honeywell would develop their own competing product and put In2 out of business.

51.     John Tyhacz accepted the proposal subject to due diligence review of the

In2 technology.  In2 executed a Non-Disclosure Agreement ("NDA") with Honeywell for the diligence review of In2 technology, software and intellectual property. The NDA required that any information exchanged between the parties or otherwise disclosed was intended only for the diligence review.

52.     The Honeywell diligence team performed a sham review by reviewing the wrong software platform.  Honeywell refused to perform any review of the actual software outlined in the technology acquisition proposal.  John Tyhacz notified In2 that Honeywell would not pursue the technology acquisition.

53.     In2 informed Honeywell that the diligence team did not review the correct software platform, but Mr. Tyhacz stated "The reality is we have closed the project and will not reopen it for any reason".

54.     In2 was not provided any information or feedback of the review process or reasons Honeywell elected to terminate the technology acquisition proposal.

55.     The review resulted in a detailed analysis of In2 intellectual property, trade secrets, and proprietary information.  Pat Tessier, Honeywell's thermostat product manager, received all review information from the diligence team enabling Honeywell to misappropriate valuable In2 intellectual property and unfairly plot internal development strategies to work around currently filed and in process product patents.

56.     Honeywell has monopoly power in the Home Systems market, manufacturing in excess of 50% of all such systems in the United States.  Honeywell has monopoly power in the submarkets of home security systems as the manufacturer of more than 50% of such systems in the United States.

57.     Honeywell has monopoly power in the home environmental systems

submarket as the manufacturer of more than 50% of such systems in the United States. With monopoly power in the manufacturing level of the market, Honeywell exerts monopoly power over wholesalers and retailers because such entities cannot stay in business if they do not conform to demands by Honeywell.

58.     Honeywell expressly directed wholesalers and retailers to refuse to sell, stock, or service In2 products, thereby creating a concerted refusal to deal with In2 through coercion of wholesalers and retailers of Home Systems.

59.     Through this action, In2 seeks provisional injunctive relief to: (a) prevent Honeywell and ADI from using or otherwise disclosing In2's intellectual property or Confidential Information; (b) prevent Honeywell from distributing any In2 hardware or software in any capacity on the grounds that Honeywell and ADI have misappropriated In2's Confidential Information for anticompetitive purposes; (c) require Honeywell and ADI to comply with its continuing Confidentiality obligations to In2, including but not limited to their respective obligations not to disclose In2 Confidential Information; and (d) require Honeywell and ADI to return all In2 Confidential Information and intellectual property.

**CLAIMS**

**FIRST CAUSE OF ACTION**

(Interference with Economic Relations)

59.     In2 hereby incorporates paragraphs 1 through 58, inclusive, as though set forth in full.

60.     Honeywell intentionally interfered with existing economic relations between In2 and In2's customers, distributors, and vendors.

61.     As a direct result, In2 was damaged and materially harmed, *inter alia*, by lost service contracts, and other termination of agreements.

## SECOND CAUSE OF ACTION

### (Interference with Prospective Economic Gain)

62.     In2 here incorporates paragraphs 1 through 61, inclusive, as though set forth in full.

63.     Honeywell intentionally interfered with prospective economic relations between In2 and its actual and prospective customers and distributors.

64.     As a direct result, In2 was damaged, inter alia, by lost sales and prospective sales, prospective service contracts, and other opportunities.

## THIRD CAUSE OF ACTION

### (Business Disparagement)

65.     In2 hereby incorporates paragraphs 1 through 64, inclusive, as though set forth in full.

66.     Honeywell disparaged the products and services offered by In2, causing material injury to In2's reputation, lost sales and prospective sales, service contracts, and other opportunities.

67.     Honeywell made false and disparaging statements about In2 and In2's products and services, intentionally and with the purpose of injuring and extinguishing In2's business.

## FOURTH CAUSE OF ACTION

### (Monopolization – Sherman Act §2)

68.     In2 here incorporates paragraphs 1 through 67, inclusive, as though set

forth in full.

69.     Honeywell has monopoly power in the relevant markets, and exercises

that power to the detriment of actual or potential competitors, including In2.

70.     Honeywell has undertaken improper and illegal steps to obtain and

maintain its monopoly power in the relevant markets, and sought to exclude and damage

actual and potential competitors, including In2.

71.     Honeywell has taken overt steps with the intent of acquiring and

maintaining monopoly power in the relevant markets.

**FIFTH CAUSE OF ACTION**

(Antitrust Unfair Competition – Sherman Act §1)

72.     In2 here incorporates paragraphs 1 through 71, inclusive, as though set

forth in full.

73.     Honeywell has used improper and illegal means to stifle competition and

damages actual and potential competitors, including In2, exploiting its monopoly position

to threaten potential customers and business partners of In2, and to force or induce third

parties to terminate and/or refuse to do business with In2.

74.     Honeywell induced In2 to provide proprietary information that Honeywell

misappropriated and used against In2.

**SIXTH CAUSE OF ACTION**

(Refusal to Deal by a Monopolist - Sherman Act §2)

75.     In2 here incorporates paragraphs 1 through 74, inclusive, as though set

forth in full.

76.     Honeywell refused to deal with and boycotted In2 in an effort to preserve

and enhance Honeywell's dominant position and monopoly power.

## SEVENTH CAUSE OF ACTION

### (Concerted Refusal to Deal – Sherman Act §1)

77.     In2 here incorporates paragraphs 1 through 76, inclusive, as though set forth in full.

78.     Honeywell directed and induced third party distributors at the same competitive level in the relevant markets not to do business with In2 and to terminate their business relations with In2.

79.     Honeywell organized and directed conspiracy whose aim was a concerted refusal to deal with In2.

## EIGHTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

80.     In2 here incorporates paragraphs 1 through 79, inclusive, as though set forth in full.

81.     Due to the nature of In2's business, In2 must protect the secrecy of its many valuable trade secrets and other confidential and proprietary materials in its possession. In particular, In2 goes to great lengths to protect its information from unauthorized access or distribution.

82.     In2's confidential and proprietary business and trade secret information comprise documents and other information that are not generally known to the public or to other persons who can obtain economic value from its disclosure or use.

83.     As explained above, In2's confidential and proprietary business and trade secret information is the subject of reasonable efforts by In2 to maintain their secrecy,

and they derive independent economic value from not being generally known.

84.     All or a portion of the documents and information comprising In2's confidential and proprietary business and trade secret information constitute "trade secrets" under the Utah Uniform Trade Secrets Act.

85.     Honeywell misappropriated In2's trade secrets through improper and deceptive means, including, without limitation, through a sham due diligence technology evaluation, in order to develop and commercialize products in direct competition with In2 products. Honeywell's unauthorized acquisition of In2's confidential and proprietary business and trade secret information may allow other businesses, including Honeywell-related businesses, to gain competitive advantage that they would not otherwise be entitled to obtain, which will detrimentally affect In2's place in the market and market share.

## NINTH CAUSE OF ACTION

### (Conversion)

86.      In2 here incorporates paragraphs 1 through 85, inclusive, as though set forth in full.

87.     In2 owns the confidential and proprietary business and trade secret information misappropriated by Honeywell during its sham due diligence technology review.

88.     Upon information and belief, Honeywell and its designated agents wrongfully acquired In2's confidential and proprietary business and trade secret information and have converted such information to obtain commercial advantage

## TENTH CAUSE OF ACTION

### (Breach of Contract)

89.     In2 here incorporates paragraphs 1 through 88, inclusive, as though set forth in full.

90.     Honeywell and In2 entered into the OEM and BailmentAgreements in 2006 and 2007.

91. Honeywell, through its bad faith actions and breaches of Confidentiality obligations, materially breached these Agreements.

## ELEVENTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

92.     In2 here incorporates paragraphs 1 through 91, inclusive, as though set forth in full.

93.     Honeywell failed to deal with In2 fairly and abused and exploited its dominant position in the security marketplace.

94.     Honeywell acted with intent to deprive In2 of the value of its Agreements with Honeywell.

## TWELFTH CAUSE OF ACTION

### (Violation of State Antitrust Statute §76-10-914(a))

95.     In2 here incorporates paragraphs 1 through 94 inclusive as though set forth in full.

96.     Honeywell entered into contracts, agreements or conspiracies to restrain trade and competition in the Home Security market in Utah and elsewhere.

## THIRTEENTH CAUSE OF ACTION

### (Violation of State Antitrust Statute §76-10-914(b))

97.     In2 here incorporates paragraphs 1 through 96 inclusive as though set forth in full.

98.     Honeywell monopolizes the market in Home Security systems through willful actions, acquiring and maintaining monopoly power in that market in Utah and elsewhere.

## FOURTEENTH CAUSE OF ACTION

### (Violation of State Antitrust Statute §76-10-914(b))

99.     In2 here incorporates paragraphs 1 through 98 inclusive as though set forth in full.

100.    Honeywell has conspired to monopolize the market in Home Security systems in Utah and elsewhere.

## FIFTEENTH CAUSE OF ACTION

### (Illegal Tying – Sherman Act §1)

101.    In2 here incorporates paragraphs 1 through 100 inclusive as though set forth in full.

102.    Honeywell expressly and implicitly conditioned sales of its home security and home environmental systems on agreements by distributors and retailers not to purchase In2 products.

103.    Honeywell refused to permit sales of such systems unless the systems included only Honeywell interfaces and excluded In2 interfaces.

## SIXTEENTH CAUSE OF ACTION

### (CLAIM FOR PROVISIONAL INJUNCTIVE RELIEF)

104.     In2 here incorporates the allegations set forth in paragraphs 1 through 103, inclusive, as though fully set forth herein.

105.     Honeywell and In2 were parties to OEM, Bailment, and Non-Disclosure Agreements which are supported by adequate considerations and are in all respects valid, enforceable, and binding contracts. These Agreements contain express provisions protecting In2's confidential and proprietary business and trade secret information.

106.     Despite the provisions in these agreements, Honeywell and ADI have disseminated to third parties and otherwise misused In2's Confidential Information and proprietary business and trade secret information.

107.     By reason of the above-alleged acts and conduct, In2 had already suffered, and will continue to suffer, harm and damage. This harm will be difficult to ascertain and may be irreparable, leaving In2 without any adequate remedy at law.

108.     In2 is entitled to an injunction ordering Honeywell and ADI to immediately return all In2 Confidential Information, intellectual property and business and trade secret information in their respective possession, custody or control, and restraining Honeywell and ADI acting in concert with them from using, copying, publishing, disclosing, transferring, and/or selling In2's confidential and proprietary business and trade secret information, and from obtaining any commercial advantage or unjust enrichment  from their respective misappropriation of that information.

### PRAYER FOR RELIEF

In2 prays for judgment as follows:

A.      Judgment in favor of itself and against Defendants, jointly and severally, for damages as a result of Defendants' anticompetitive conduct, trebled;

B.      Judgment in favor of itself and against Defendants for monetary damages, including, but not limited to, lost profits and costs of development;

C.      Pre- and post-judgment interest;

D.      For preliminary and permanent injunctive relief requiring that Honeywell and ADI, and all those acting in concert with them, to immediately return any and all In2 confidential and proprietary business and trade secret information in their possession, custody or control, and to account for each and every disclosure, transfer, and/or use of any part of this information, including an accounting of each and every individual or entity given access to any part of this information and the timing, extent and nature of that access;

F.      For preliminary and permanent injunctive relief, enjoining and restraining Honeywell and ADI from the wrongful acts and conducts set forth above, including an order that Honeywell and ADI, and all persons or entities acting in concert with them, be enjoined:

1.      From further disclosing or otherwise using In2's confidential and proprietary business and trade secret information, whether in electronic, hard copy or other form, wrongfully obtained or retained from In2, including In2's confidential and proprietary business and trade secret information described above;

2.      From transferring In2's confidential and proprietary business and trade secret information; and

    3.     From violating any of Honeywell's or ADI's continuing duties to In2 under the respective OEM, Bailment, or Non-Disclosure Agreements;

    4.     From deleting or destroying any In2 property or Confidential Information before returning it to In2;

H.    Costs of suit, including reasonable attorneys' fees; and

I.    Such other and further relief as the Court may deem appropriate and just.


**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b), Plaintiff demands a trial by jury of all claims asserted.


Dated this 4th day of January, 2011.

                **TELOS VG, PLLC**


                _____

                John H. Bogart

                R. Lee Saber

                Attorneys for Plaintiff