# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| IN2 NETWORKS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>HONEYWELL INTERNATIONAL, et al.,<br><br>Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:11-cv-6-TC |

In2 Networks, Inc. (In2) brought suit against Defendants Honeywell International, Inc. (Honeywell) and ADI, alleging breach of contract, state law tort claims, and state and federal antitrust claims. On May 31, 2011, the court granted Defendants' motion to dismiss. In2 was given three weeks to file a motion to amend its complaint. In accordance with the court's order, In2 filed a motion to amend with a supporting memorandum and proposed amended complaint. Defendants oppose In2's motion and contend that the proposed amended complaint fails to state a claim upon which relief can be granted. For the reasons set forth below, In2's motion to amend (Dkt. No. 29) is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND[1]

In2 develops software and hardware products, technology and services for internet controllable home security and environmental control systems. Two such products are at issue in

---

[1] The factual allegations are contained in In2's proposed amended complaint (Dkt. No. 30-1). The court will refer to specific factual allegations as necessary.

this case: In2's Vista ICM and Energy ICM systems. These products enable owners to control their security and environmental control systems through a web-based interface. Both of these systems are compatible with the Honeywell series of security and environmental control systems.

The two ICM products were the subject of several contracts between In2 and Honeywell, including the OEM Supply and License Agreement (OEM Agreement), the Bailment and Service Agreement (Bailment Agreement), and the Non-Disclosure Agreement. In2 alleges that the Defendants breached various provisions of the Bailment Agreement, the Non-Disclosure Agreement, and oral agreements made in connection with those agreements.

Further, In2 alleges that the Defendants interfered with In2's existing and prospective economic relationships; made false and disparaging statements about In2, its products and services; misappropriated In2's trade secrets; and engaged in various forms of anti-competitive behavior, in violation of federal and Utah antitrust law.

## ANALYSIS

**Standard of Review**

"Although Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." Bradley v. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004) (quoting Jefferson Cty. Sch. Dist. v. Moody's Investor's Servs., 175 F.3d 848, 859 (10th Cir. 1999)). Consequently, the court will analyze Defendants' objection to In2's proposed amended complaint as it would a motion to dismiss.

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

relief may be granted, the court must presume the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations. Tal v. Hogan, 453 F.3d 1244, 1252 (2006); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). Conclusory allegations are allegations that "do not allege the factual basis" for the claim. Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995). See also Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based" (emphasis added)). The court is not bound by a complaint's legal conclusions, deductions and opinions couched as facts. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). And although all reasonable inferences must be drawn in the non-moving party's favor, Tal, 453 F.3d at 1252, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face," Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 550 U.S. at 570). Stating a claim under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555).

**Tort Claims**

**Interference with Economic Relations (Cause of Action 1) and Interference with Prospective Economic Advantage (Cause of Action 2)**

Under Utah law, the tort of interference with economic relations "protects both existing contractual relationships and prospective relationships of economic advantage not yet reduced to a formal contract." St. Benedict's Dev. Co. v. St. Benedict's Hosp., 811 P.2d 194, 200 (Utah

1991). A plaintiff must prove: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." Langille v. Logan City, 9 Fed. App'x 892, 900 (10th Cir. 2001) (quoting St. Benedict's, 811 P.2d at 200).

In pleading a claim for interference with economic relations, "[a] plaintiff cannot rest on conclusory allegations that it has existing or potential economic relations. . . . [Rather, a plaintiff must] allege facts showing either an existing contract or business relationship with a third party, or a potential contract or business opportunity with a third party or identifiable class of persons." Purco Fleet Servs. v. Towers, 38 F. Supp. 2d 1320, 1325 (D. Utah 1999) (quoting Proctor & Gamble Co. v. Haugen, 947 F. Supp. 1551, 1556-57 (D. Utah 1996)). The court in Purco Fleet dismissed the plaintiff's claim for interference with contractual relationship because the plaintiff failed to allege the existence of a present contract or relationship. The plaintiff had merely alleged that there were "current and potential customers" who were affected. Purco Fleet, 38 F. Supp. 2d at 1325-26. This was insufficient even under the pre-Twombly/Iqbal pleading standards.

In its proposed amended complaint, In2 alleges that Honeywell intentionally interfered with "existing economic relations between In2 and In2's customers, distributors, and vendors" and "also threatened dealers and wholesalers, including Ridgeline Mechanical, who had been doing business with In2." (Compl. ¶ 44.)² Rather than merely alleging that In2 had "current and potential customers," In2 alleges that it was "actively engaged with outside sales rep firms

---

² "Compl.," as used throughout, refers to In2's proposed amended complaint (Dkt. No. 30-1).

4

including Ridgeline Mechanical and EDOS to assist In2 in marketing and selling the In2 branded Energy ICM." (Id. ¶ 30.) Further, In2 alleges that Honeywell interfered with its relationship with EDOS: "In April 2010, John Tyhacz told the owner of EDOS that Honeywell would terminate their representation agreement if they engaged with In2." (Id. ¶ 30.) Viewed in the light most favorable to In2, these allegations make it plausible that Defendants interfered with existing or potential relationships with Ridgeline Mechanical and EDOS.

Because In2 has sufficiently pled its interference with economic advantage claim, In2's motion to amend is GRANTED for causes of action 1 and 2. But these causes of actions are limited to In2's relationships with Ridgeline Mechanical and EDOS, as those are the only two parties that In2 identifies in its proposed amended complaint.

**Business Disparagement[3] (Cause of Action 3)**

For a plaintiff to recover under a claim of business disparagement, it must prove (1) falsity of the statement made; (2) malice by the party making the statement; and (3) special damages. Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co., 505 F. Supp. 2d 1178, 1191 (D. Utah 2007) (quoting Direct Imp. Buyers Ass'n v. KSL, Inc., 538 P.2d 1040, 1042 (Utah 1975)).

In2 alleges that the Defendants made two disparaging statements in a letter sent to dealers who purchased Vista ICM: (1) that Vista ICM was obsolete (Compl. ¶ 13) and (2) that Defendants had concerns regarding In2's ability to continue to provide long-term support for the product (id. ¶ 14). In2 also alleges that the statements were false; that the Vista ICM was fully

---

[3] Business disparagement is merely a different name for the tort of injurious falsehood. Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co., 505 F. Supp. 2d 1178, 1191 (D. Utah 2007) (quoting Bankwest v. Fid. & Deposit Co., 63 F.3d 974, 980 (10th Cir. 1995)).

functional and not obsolete (id. ¶ 13) and that Defendants did not actually have concerns about In2's ability to provide long term support (id. ¶ 14). Finally, In2 alleges that Defendants made these statements intentionally and with the purpose of injuring and extinguishing In2's business. (Id. ¶¶ 13, 14.)

Defendants contend that the statements made in the letter, when viewed in context, cannot be defamatory. This argument is based largely on Defendants' interpretation of the words and phrases used in the letter—interpretations that In2 disputes. At this stage, the court must view all allegations in the light most favorable to In2. In doing so, the court finds that In2 sufficiently states a claim for business disparagement. Accordingly, In2's motion to amend is GRANTED for cause of action 3.

**Misappropriation of Trade Secrets (Cause of Action 8) and Violation of Uniform Trade Secret Act (Cause of Action 15)**[4]

A claim for misappropriation of trade secrets requires (1) existence of a trade secret; (2) communication of the trade secret; and (3) that defendant's use of the trade secret injures the plaintiff. Farm Bureau, 505 F. Supp. 2d at 1184-85.

In its proposed amended complaint, In2 alleges, in a conclusory fashion, that "[a]ll or a portion of the documents and information comprising In2's confidential and proprietary business and trade secret information constitute 'trade secrets' under the Utah Uniform Trade Secrets Act." (Compl. ¶ 66.) In2 does not identify the information or even provide a general description of the information that it contends is a "trade secret."

---

[4] The Utah Uniform Trade Secrets Act displaces the common law misappropriation claim. Utah Code Ann.§ 13-24-8(1).

Further, In2 does not allege how Honeywell used this trade secret information to In2's detriment. It appears that In2 believes that Gordon Hope, who works for Honeywell, used In2's trade secrets to copy their product. But In2 does not specify any information that Mr. Hope used to create a copy of In2's product. It also is unclear if In2 alleges that Defendants <u>did</u> misappropriate In2's trade secrets or only that they <u>could</u> misappropriate them. The proposed amended complaint alleges that Defendants "received all review information from the diligence team <u>enabling</u> Honeywell to misappropriate valuable In2 intellectual property and unfairly plot internal development strategies to work around currently filed and in process product patents." (Compl. ¶ 33 (emphasis added).) But In2 does not allege that Defendants actually took any actions.

Even viewed in a light most favorable to In2, these allegations fail to state a claim for misappropriation. Accordingly, In2's motion to amend is DENIED for causes of action 8 and 15.

**Injunctive Relief (Cause of Action 16)**

In2 seeks an injunction

> ordering Honeywell and ADI to immediately return all In2 Confidential Information, intellectual property and business and trade secret information . . . and restraining Honeywell and ADI acting in concert with them from using, copying, publishing, disclosing, transferring, and/or selling In2's confidential and proprietary business and trade secret information, and from obtaining any commercial advantage or unjust enrichment from their respective misappropriation of that information.

(Compl. ¶ 88.) Because In2's claim for injunctive relief is based on In2's eighth and fifteenth causes of action and the court has denied leave to amend those causes of action, In2's motion to amend is DENIED for cause of action 16.

**Contract Claims**

**Breach of Contract (Cause of Action 10)**

In2 alleges that "Honeywell breached the Bailment Agreement and Non-Disclosure Agreement by misappropriating In2 confidential information . . . , and by refusing to provide essential consideration . . . in the form of volume of sales and orders. Honeywell breached its promise to permit In2 to offer its products for sale through ADI and market In2 branded products." (Compl. ¶ 72.) These breaches are based in part on alleged oral agreements that In2 and Defendants had.

Defendants contend that the terms of the agreements themselves bar In2's claim. In2 disputes the meaning Defendants give to the terms of the contracts. At this stage in the proceedings, the court will not interpret the various contract provisions. Viewing the allegations in the light most favorable to In2, In2 sufficiently identifies the agreements and alleged oral agreements, and a breach of those agreements. Accordingly, In2's motion to amend is GRANTED for cause of action 10.

**Breach of the Covenant of Good Faith and Fair Dealing (Cause of Action 11)**

Under both Utah and New York law,[5] "[a]n implied covenant of good faith and fair dealing inheres in every contract." Oman v. Davis Sch. Dist., 2008 UT 70, ¶ 47, 194 P.3d 956; see also Dalton v. Educ. Testing Serv., 663 N.E.2d 289, 291 (N.Y. 1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance."). This implied covenant ensures that neither party does anything that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Oman,

---

[5] The Bailment Agreement contains an applicable law provision that designates New York law as the applicable law. (Dkt. No. 6-2.)

2008 UT 70, ¶ 47; Dalton, 663 N.E.2d at 291.

In2 alleges that "Honeywell failed to deal with In2 fairly and abused and exploited its dominant position in the security marketplace" and "acted with intent to deprive In2 of the value of its Agreements with Honeywell." (Comp. ¶ 75.) In addition, "Honeywell induced In2 to enter agreements and accept promises when Honeywell intended to ensure that the value of the agreements and the promises would not be realized." (Id. ¶ 75.) When considered as a whole, with the other allegations in the Complaint, In2 sufficiently alleges a cause of action for breach of the implied covenant of good faith and fair dealing. Accordingly, In2's motion to amend is GRANTED for cause of action 11.

**Antitrust Claims**

As an initial matter, Defendants contend that all of In2's antitrust claims fail in light of Christy Sports, LLC v. Deer Valley Resort Co., Ltd., 555 F.3d 1188 (10th Cir. 2009). Christy Sports involved an antitrust claim brought by Christy Sports, a ski rental business, against Deer Valley Resort Company (Deer Valley), the owner of a destination ski resort. Originally, Deer Valley owned all of the property at the resort's mid-mountain village, but over time, it sold parcels to third parties. One such parcel was sold to people who then built a commercial building that was leased to Christy Sports' predecessor. The parcel was subject to a restrictive covenant that prohibited the owners from renting skis on the property without Deer Valley's consent. At some point, Deer Valley allowed Christy Sports' predecessor to rent skis in return for fifteen percent of the rental revenue. Later, after Christy Sports began operating at Deer Valley's mid-mountain village, Christy Sports stopped paying the fifteen percent, with no objection from Deer Valley. But in 2005, Deer Valley opened its own mid-mountain ski rental business and notified

Christy Sports that the following year the restrictive covenant would be enforced and Christy Sports could no longer rent skis. Christy Sports argued that Deer Valley's decision to begin enforcing the restrictive covenant violated § 2 of the Sherman Act by either actual or attempted monopolization.

The Tenth Circuit affirmed the district court's dismissal of Christy Sports' Sherman Act claim and held that "the creator of a resort has no obligation under the antitrust laws to allow competitive suppliers of ancillary services on its property." Id. at 1193. The court found that its conclusion could be reached one of two ways: by reference to the proper definition of a market or by reference to the absence of anticompetitive conduct. First, Christy Sports' definition of the product market as "rental skis" was too narrow. Deer Valley offered "a cluster of products that combine to create a destination ski experience; rental skis [were] only one small component." Id. at 1194. Alternatively, the court reasoned that Deer Valley's conduct was not anticompetitive. "Deer Valley [was] not required to invite competitors onto its property to rent skis to its patrons, even if a failure to do so would mean it [was] the sole supplier of rental skis at the ski area." Id. Under either line of reasoning, Christy Sports had failed to plead a plausible claim for monopolization under § 2 of the Sherman Act.

Christy Sports might be determinative if In2 were to simply allege that the Defendants prevented In2 from selling Honeywell compatible products (requiring Honeywell intellectual property). But when the allegations in the proposed amended complaint are viewed in the light most favorable to In2, this is not all that In2 alleges. In2 alleges that "Honeywell's action and directions to third parties prevented In2 from entering the markets for security and environmental control systems, and in particular, the internet submarkets, and prevented In2 from developing a

competing product." (Comp. ¶ 36.) From this and similar allegations, the court must draw the inference that In2 had either a competing product that did not require use of Honeywell's intellectual property or that it had the potential to create such a product. While the antitrust laws would not require Honeywell to allow In2 to use its property, like Deer Valley was not required to invite competitors onto its property to rent skis, they would prevent anticompetitive activity affecting In2's independent products. Accordingly, the court must evaluate each of In2's antitrust claims to determine if it has sufficiently plead those claims.

**Sherman Act § 2 Monopolization (Cause of Action 4)**

To state a monopolization claim under Sherman Act § 2, the plaintiff must plead "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development of a consequence of a superior product, business acumen, or historic accident." Full Draw Prods. v. Easton Sports, Inc., 182 F.3d 745, 756 (10th Cir. 1999). Monopoly power "requires proof of both power to control prices and power to exclude competition." Id. at 757. This power may be inferred when a company has a predominant share of the market. United States v. Grinnell Corp., 384 U.S. 563, 571 (1966).

In2 alleges that Honeywell "has monopoly power in the Home Systems market, manufacturing in excess of 50% of all such systems in the United States," "has monopoly power in the submarkets of home security systems as the manufacturer of more than 50% of such systems in the United States," "is believed to have control [sic] between 75% and 90% of the internet controllable systems," "has monopoly power in the home environmental systems submarket as the manufacturer of more than 50% of such systems in the United States," and "is

11

believed to have control [sic] between 75% and 90% the internet capable systems." (Compl. ¶¶ 34-35.) From In2's allegation that Honeywell has a predominant share of the relevant markets (between 50 and 90%), the court can infer, for purposes of this motion, that Honeywell had monopoly power.[6]

But, even liberally reading the allegations, In2 has failed to properly plead that any such monopoly power was willfully acquired and is not the result of a superior product, business acumen, or historic accident. The only allegation pertaining to this second element states that "Honeywell has undertaken improper and illegal steps to obtain and maintain its monopoly power." (Compl. ¶ 70.) There are no factual allegations that support this conclusion. Because In2's proposed amended complaint does not contain "enough facts to state a claim to relief that is plausible on its face," Ridge at Red Hawk, 493 F.3d at 1177, In2's motion to amend is DENIED for cause of action 4.

**Sherman Act § 1 Unfair Competition (Cause of Action 5)**

To state a claim for a Sherman Act § 1 violation, "the plaintiff must allege facts which show: the defendant entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant market." Full Draw, 182 F.3d 745, 756 (10th Cir. 1999). A conspiracy involves "two or more entities that previously pursued their own interests separately . . . combining to act as one for their common benefit." Abraham v. Intermountain Health Care Inc.,

---

[6] The court notes that "market share alone is insufficient to establish market power." Bright v. Moss Ambulance Serv., Inc., 824 F.2d 819, 824 (10th Cir. 1987). But at this stage in the proceedings and when the allegations are viewed in the light most favorable to In2, the allegations that Honeywell controlled between 50 and 90% of the relevant markets make it plausible that Honeywell had monopoly power.

461 F.3d 1249, 1256 (10th Cir. 2006).

Here, In2 only generally alleges that Honeywell: "directed wholesalers and retailers to refuse to sell . . . In2 products" (Compl. ¶ 36); "threaten[ed] potential customers and business partners of In2" (id. ¶ 73); and "force[d] or induce[d] third parties to terminate and/or refuse to do business with In2" (id.). Nowhere in its proposed amended complaint does In2 identify any specific person with whom Honeywell agreed. The closest it comes is the allegation that Honeywell directed its own (unspecified) wholesalers and retailers to refuse to sell In2 products. As in Twombly, In2's "complaint leaves no doubt that [In2] rest[s] [its] § 1 claim on descriptions of parallel conduct and not on any independent allegation of actual agreement." Twombly, 550 U.S. at 564. And, like in Twombly, In2 has not pled a "specific time, place, or person involved in the alleged conspiracies." Id. at 565 n.10. This does not meet the pleading requirement, and In2's cause of action fails for this reason. See Compliance Mktg., Inc. v. Drugtest, Inc., 2010 WL 1416823, at *6 (D. Colo. April 7, 2010) (dismissing Sherman Act § 1 claim because the complaint did not "provide sufficient factual basis to demonstrate concerted action between each [company using the service] and [the company offering the service]").

Accordingly, In2's motion to amend is DENIED for cause of action 5.

**Sherman Act § 2 Refusal to Deal by a Monopolist (Cause of Action 6)**

This cause of action fails because In2 hasn't adequately pled that Honeywell willfully acquired and maintained monopoly power, as discussed above for cause of action 4 (the Sherman Act § 2 monopoly claim). Additionally, Honeywell's alleged refusal to deal with In2 cannot support a claim under the Sherman Act. "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing."

Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 555 U.S. 438, 129 S. Ct. 1109, 1118 (2009); see also Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, 540 U.S. 398, 408 (2004) (the Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal"). And In2 has not added any facts or allegations that Honeywell's conduct falls outside of this "general rule."

Further, to the extent that In2 pleads an exclusive dealing arrangement, In2 must plead a relevant market, which includes both a relevant product market and a relevant geographic market. "[T]he United States" is a sufficient geographic market. See Compliance Mktg., 2010 WL 1416823, at * 7 (finding geographic market of "the United States" sufficient"). In2 must also "specifically define the product market by reference to the 'reasonable interchangeability of use or the cross-elasticity of demand between the product [in question] and substitutes for it.'" Compliance Mktg., 2010 WL 1416823, at *7 (quoting Brown Shoe Co., Inc. v. United States, 370 U.S. 294, 325 (1962)). And where the plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." Campfield v. State Farm Mut. Auto. Ins. Co., 532 F.3d 1111, 1118 (10th Cir. 2008). In2 has not so defined its alleged relevant product market.

For these reasons, In2's motion to amend is DENIED for cause of action 6.

**Sherman Act § 1 Concerted Refusal to Deal (Cause of Action 7)**

This cause of action, like cause of action 5 discussed above, fails because In2 has not pled an agreement between Honeywell and another specified entity. Stating a claim under § 1 requires "a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Twombly, 550 U.S. at 556. Accordingly, In2's motion to amend is DENIED for cause of action 7.

**Sherman Act § 1 Illegal Tying (Cause of Action 9)**

"In cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product." Compliance Mktg., 2010 WL 1416823, at *9. Because In2 has failed to plead the relevant market adequately, as discussed above, any argument that Defendants' conduct constitutes an illegal tying arrangement necessarily fails under a rule of reason analysis.

In2, therefore, could only plead a *per se* illegal tying arrangement. In order to establish the existence of an illegal tying arrangement, "Plaintiffs must adequately plead the existence of: (1) two separate products; (2) a tie- or conditioning of the sale of one product on the purchase of another; (3) sufficient economic power in the tying market; and (4) a substantial volume of commerce affected in the tied product market." Id. at *10 (internal citations and quotations omitted).

Here, In2 does not allege that Honeywell conditioned the sale of its product on the purchase of another ("tied") product. Rather, In2 alleges that Honeywell conditioned the sale of its products on the third-party not buying In2 products. This type of "negative tie" can be the basis of a tying claim if the buyer "agrees that he will not purchase [the tied product] from any other supplier." Eastman Kodak Co. v. Image Technical Servs. Inc., 504 U.S. 451, 461 (1992).

15

But even a negative tying claim requires the existence of two separate and distinct products. See id. at 462; Compliance Mktg., 2010 WL 1416823, at *9.

In2 only generally alleges that Honeywell conditioned the sale of its product on the buyer not buying any In2 product. In2 has not made clear that there is a second product that buyers were prohibited from purchasing from In2. For a similar reason, In2 fails to allege that Honeywell has sufficient economic power in the tying market—it is unclear what the tying market would be other than the home security system market. And finally, In2 does not allege the existence of an agreement between Honeywell and any third-party (as discussed above) or that a substantial volume of commerce in the tied market was affected.

For all of these reasons, In2 fails in its proposed amended complaint to state a claim for tying. Accordingly, In2's motion to amend is DENIED for cause of action 9.

**Utah Antitrust Statute - Utah Code § 76-10-914(a) (Causes of Action 12-14)**

Both parties agree that the interpretation of Utah's Antitrust Statute is guided by federal case law interpreting the Sherman Act. Because In2's proposed amended complaint does not state a claim under the Sherman Act, In2's motion to amend is DENIED for causes of action 12, 13, and 14.

## CONCLUSION

For the foregoing reasons, In2's motion to amend (Dkt. No. 29) is GRANTED IN PART AND DENIED IN PART:

- In2 may file its proposed amended complaint for causes of action 1, 2, 3, 10, and 11, as more fully discussed above;

- In2's motion to amend causes of action 4 through 9 and 12 through 16 is DENIED.

DATED this 11th day of October, 2011.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge